STATE of Arkansas *v.* William KNIGHT

CR 75-125                          533 S.W. 2d 488

Opinion delivered January 19, 1976
[Rehearing denied March 29, 1976.]

*Jim Guy Tucker*, Atty. Gen., by: *Gary Isbell*, Asst. Atty. Gen., for appellant.

*Rubens & Rubens*, by: *Kent J. Rubens*, for appellee.

J. FRED JONES, Justice. This is an appeal by the State of Arkansas from an order in a circuit court judgment granting the appellee-defendant's motion for discharge and dismissal of felony charges against him, because he had been denied a speedy trial.

On July 5, 1974, the appellee William Knight was charged on information filed by the prosecuting attorney in Crittenden County with the crime of first degree murder. He was arraigned on September 4, 1974, at which time he entered a plea of not guilty. Knight was unable to make bond so he remained in jail while awaiting trial. For various reasons not germane to the issues here, and really not fully disclosed by the record, Knight's case did not come to trial until February 24, 1975.

When appellee Knight's case came to trial on February 24, 1975, he filed a motion to dismiss in compliance with Ark. Stat. Ann. § 43-1708 (Repl. 1964) because he was not given a speedy trial. Knight's case proceeded to jury trial on February 24, 1975. He was found guilty of murder in the second degree, and the jury imposed a sentence of 15 years in the Arkansas Department of Correction. On February 26, 1975, Knight filed a motion to postpone sentencing under the jury verdict until his motion to dismiss for want of a speedy trial could be heard and passed on by the trial court. Sentencing was postponed pursuant to Knight's motion and on May 15, 1975, a hearing was held on the motion to dismiss. On June 9, 1975, the trial court entered the judgment order appealed from as follows:

"Now on this the 24th day of February, 1975, this cause comes on to be heard. The Plaintiff appears by David Burnett, Prosecuting Attorney within and for the Second Judicial District of Arkansas, and Joe Rogers, Deputy Prosecuting Attorney for Crittenden County, Arkansas. The Defendant appears in person and with his attorney, Kent J. Rubens. The Defendant, having previously waived a formal arraignment and enter[ed] his plea of NOT GUILTY to the charge of murder in the first degree, announced ready for trial subject to the Court's ruling on Defendant's Motion for Dismissal. A

jury of twelve (12) from the regular panel of petit jurors was impaneled and sworn to try the cause, and, having heard the evidence, the instructions of the Court, and argument of counsel, retired to consider its verdict of guilty of the lesser included crime of murder in the second degree and fixed his punishment for a term of fifteen (15) years in the State Penitentiary.

The Court informed the Defendant of the nature of the charge, his plea thereon and the verdict of the jury thereon, and asked if Defendant had any legal cause to show why judgment should not be pronounced against him, and the Defendant again argued that the Court consider his Motion for Dismissal for Failure to Grant Him a Speedy Trial.

Sentencing was postponed, and a hearing was held to determine the merit of Defendant's Motion, said hearing was held on May 15, 1975, with the Defendant appearing in person and by and through his attorney, Kent J. Rubens, and the State appearing by and through its attorney, David Burnett, Prosecuting Attorney within and for the Second Judicial District of Arkansas, together with Joe Rogers and James C. Hale, Jr., Deputy Prosecuting Attorneys for Crittenden County, Arkansas. The Court heard the evidence of the parties together with their witnesses, the arguments of counsel and the Brief submitted by Defendant.

On Monday, June 9, 1975, the Court by letter advised Defendant's attorney that the Motion should be granted and that the charge against the Defendant should be dismissed with prejudice and the verdict of the jury set aside.

IT IS, THEREFORE, BY THE COURT CONSIDERED AND ORDERED that the verdict of the jury should be and the same is now hereby set aside; that the Defendant, William Lee Knight, be discharged from the custody of the Sheriff of Crittenden County, Arkansas, and the charge of murder in the first degree filed against him dismissed with prejudice and costs

shall be taxed to the State.

ENTERED this 30th day of June, 1975."

On its appeal to this court the state contends that the ruling of the trial court was clearly erroneous both legally and factually. The appellee contends, however, that the appeal should be dismissed for failure of the state to comply with statutory requirements pertaining to appeals by the state. We shall first consider the appellee's contentions.

Ark. Stat. Ann. § 43-2720 (Repl. 1964) provides for appeal by the state and appears as follows:

> "Where an appeal on behalf of the State is desired, the prosecuting attorney shall pray the appeal during the term at which the decision is rendered, whereupon the clerk shall immediately make a transcript of the record and transmit the same to the attorney general, or deliver the transcript to the prosecuting attorney, to be transmitted by him. If the attorney general, on inspecting the record, is satisfied that error has been committed to the prejudice of the State, and upon which it is important to the correct and uniform administration of the criminal law that the Supreme Court should decide, he may by lodging the transcript in the clerk's office of the Supreme Court within sixty [60] days after the decision, take the appeal."

The appellee argues that strict compliance with the terms of the statute is jurisdictional and that under its terms the attorney "must endorse on the transcript a direction to the clerk of the Supreme Court to file same," citing *State* v. *Cox*, 29 Ark. 115. We find no language in the statute requiring the attorney general to endorse on the transcript any direction to the clerk of this court. Neither do we find such requirement in *State* v. *Cox, supra*. The *Cox* case presented a unique situation. In that case this court found from the exceptions taken by the prosecuting attorney that the trial court had excluded all evidence that seemed to have been offered by the state and, consequently, the defendant was found not guilty. This court in *Cox* then said:

"How, the case got into this court does not appear. There is no record entry in the transcript before us, showing that an appeal was prayed by the state, in the circuit court, nor does the file mark of the clerk of this court show who filed the transcript in his office. It appears simply to have been filed, and the cause docketed and submitted.

This court in *Cox* then recited the statutory requirement, that where an appeal on behalf of the state is desired, the prosecuting attorney shall pray the appeal during the term at which the decision is rendered; whereupon, the clerk shall make a transcript of the record and transmit it to the attorney general or give it to the prosecuting attorney to be by him transmitted to the attorney general. This court then recited that portion of the statute providing that if the attorney general upon inspection of the record is satisfied that error had been committed to the prejudice of the state, etc., "he may, by lodging the transcript in the clerk's office of the Supreme Court within sixty days [60] days after the decision, take the appeal."

The prosecuting attorney in the case at bar did file notice of appeal on July 7, 1975, and designated for inclusion in the record on appeal "the complete record and all proceedings and evidence in the action." The transcript was filed with the clerk of this court on August 4, 1975. There is nothing in the record to indicate that the transcript was filed by anyone other than the attorney general and we deem it unnecessary for the record to show whether it was submitted to the attorney general by the clerk of the trial court or by the prosecuting attorney.

This court takes judicial notice of motions filed with its clerk and this court's actions pertaining thereto. Both the appellee-defendant and the state requested and were granted extensions of time for filing briefs. On September 10, 1975, the state,"by and through Jim Guy Tucker, Attorney General," filed a motion for extension of time to file appellant's brief and the motion was granted by this court. On November 26, 1975, the attorney general filed an additional motion for extension of time in which to file

appellant's reply brief and we granted that motion also. Furthermore, the docket sheet in the clerk's office of this court recites "Attorney General — State of Arkansas — Filed August 4, 1975." We conclude that the state of Arkansas sufficiently complied with the statutory requirements in perfecting the state's appeal to this court, and that this court has jurisdiction in connection therewith.

The appellee also contends and argues that the state failed to transmit the complete record on appeal in compliance with the prosecuting attorney's notice of appeal where he stated: "The plaintiff designated for inclusion in the record on the Appeal, the complete record and all proceedings and evidence in this action." Apparently the appellee is contending that the state should have filed the entire record of the *trial* which resulted in the appellee's conviction of murder in the second degree. We do not agree with the appellee in this contention. There is no appeal before this court pertaining to the appellee's conviction. The matter before us on this appeal pertains to the appellee's discharge and not to his conviction. We conclude that the record before us is entirely adequate and sufficient for our determination of the question here involved.

The appell e also argues that "the record discloses that no exceptions we e made to the ruling of the court nor was a motion for new trial made." He argues that both of these procedural steps were necessary in order for this court to review the matter. A new trial is defined by statute, Ark. Stat. Ann. § 43-2201 Repl. 1964), as "the re-examination of an issue of fact in the same court by another jury after a verdict has been given." The purpose of a motion for a new trial is to call the alleged errors occurring during the trial to the attention of the court, and to afford an opportunity for correction by granting a new trial if the errors may not otherwise be corrected. *Nordin v. State*, 143 Ark. 364, 220 S.W. 473 (1920); *State v. Wilhite*, 211 Ark. 1065, 204 S.W. 2d 562 (1947). In the case at bar there is no allegation or contention that error occurred in the *trial* of the appellee. The contention is that error occurred in granting the appellee's motion for discharge, thereby voiding the trial and the jury verdict.

The appellee erroneously concludes that no part of Act 333 of 1971 is available to the state on this appeal. It is true that § 43-2720, *supra*, provides the only manner by which the state may perfect an appeal to this court, and it is also true that Act 333 of 1971, Ark. Stat. Ann. § 43-2720.1 (Supp. 1973), provides that the *manner* in which the state or other prosecuting party may appeal in a criminal case is not altered thereby. Act 333, Ark. Stat. Ann. § 43-2725.1 (Supp. 1973), provides that exceptions and motions for new trial are no longer necessary to preserve an error for review on appeal and we are of the opinion that this section applies to the state the same as to individuals, and that this section does not conflict with or change the *manner* by which the state may appeal as set forth in § 43-2720, *supra*.

Furthermore, the error complained of by the state in the case at bar appears on the face of the record before us. The terms of the trial courts are fixed by statute and the record is clear as to when the appellee was informed against and when he was brought to trial. The record is also clear that he remained in jail between those dates.

Turning now to the appellant's contentions, the only question before us is whether the trial court erred in granting the appellee's motion for discharge on the ground that he had not been given a speedy trial under the provisions of Ark. Stat. Ann. § 43-1708 (Repl. 1964), which reads as follows:

"If any person indicted for any offense, and committed to prison, shall not be brought to trial before the end of the second term of the court having jurisdiction of the offense, which shall be held after the finding of such indictment, he shall be discharged so far as relates to the offense for which he was committed, unless the delay shall happen on the application of the prisoner."

Thus, it is seen that § 43-1708 pertains to an accused who is incarcerated in jail. The next section of the statute, § 43-1709, pertains to an accused who is free on bond, and provides for discharge if not brought to trial by the end of the *third* term of the court having jurisdiction of the offense, which shall be held after the finding of such indictment. Then the

following section, § 43-1710, provides as follows:

"Nothing in the two preceding sections shall be so construed, as to discharge any person who may have been indicted for any criminal offense, on account of the failure of the judge to hold any term of the court, or for the want of time to try such person at any term of the court."

It is conceded that the appellee-defendant remained in the Crittenden County jail during the entire time his case was pending. Consequently, his motion for discharge was governed by § 43-1708, *supra*, so the precise question before us on this appeal is whether the appellee was brought to trial before the end of the second term of the court having jurisdiction of the offense, which was held after the filing of the information charging him with the crime of murder. It would appear that any additional question that might have arisen under § 43-1710, *supra*, was rendered more or less inapplicable to this case because the trial court's act in granting the motion to discharge would indicate that the delay in bringing the appellee to trial was not "on account of the failure of the judge to hold any term of court, or for the want of time to try such person at any term of court." The statutory terms of the three divisions of the Crittenden County Circuit Court are set out in Ark. Stat. Ann. § 22-310 (Supp. 1973) as follows:

"Terms, 1st division (criminal), on the 3rd Monday in February and the 3rd Monday in September; 2nd division (civil), on the 4th Monday in January and the 3rd Monday in November; 3rd division (civil), on the 2nd Monday in May and the 4th Monday in June."

The appellee Knight was informed against on July 5, 1974, which was within the February, 1974, term of the first division and within the January, 1974, term of the second division and within the June, 1974, term of the third division. He was brought to trial on February 24, 1975, which was during the February, 1975, term of the first division (the third Monday falling on February 17). He was brought to trial during the January, 1975, term of the second division and during the June, 1974, term of the third division. The 1974

February term of the first division in which the information was filed ended on the third Monday in September, 1974, which date constituted the end of the term of the first division in which the information was filed, and constituted the beginning of the September, 1974, term which was the first term of the first division *after* the information was filed. This September, 1974, term expired on the third Monday in February, 1975, when the second term *after the information was filed* commenced. Consequently, the appellee was put to trial well within the second term of the first division court after the information was filed against him. The 1974 January term of the second division, and the one in which the information was filed, terminated on the third Monday in November, 1974, when the first term of that division *after the information was filed* commenced. This November, 1974, term continued until the fourth Monday in January, 1975, when the second term *after the information was filed* commenced. Consequently, the appellee was brought to trial well within the second term of that division after the information was filed. The information was filed on July 5, 1974, which was within the June, 1974, term of the third division. This term extended to the second Monday in May, 1975, when the first term after the information was filed commenced. Consequently, the appellee was brought to trial during the same term of the third division in which the information was filed against him. It is obvious, therefore, that two full terms of any one of the three divisions had not expired between the time the information was filed and the appellee was brought to trial.

Apparently the trial court was confused by our holdings in *Breedlove v. State*, 225 Ark. 170, 280 S.W. 2d 224, as related to *Stewart v. State*, 13 Ark. 720, cited in *Breedlove* as the leading case on the subject. It further appears that our decision in *Gardner v. State*, 252 Ark. 828, 481 S.W. 2d 342, having to do with the application of the statutes to multi-division circuit courts, may have added to the confusion. We shall now attempt to clarify our views and reconcile any apparent conflict in those decisions. The statutes on the subject have remained, for all practical purposes, the same since *Stewart v. State, supra*, was decided in 1853. The opinion in *Stewart* contains a thorough discussion of many facets of that case not here involved, but Stewart remained in jail until brought to

trial and he sought discharge under § 179 of the statute (now Ark. Stat. Ann. § 43-1708 [Repl. 1964]), and in connection with the right of the accused under that statute this court said:

"[I]n our opinion, from the phraseology of section 179 [now Ark. Stat. Ann. § 43-1708], the unavoidable construction of it is, that, in order to entitle the accused to be discharged for such cause; there must be, on the part of the State, a failure of three terms to bring him to trial, that is to say, at the end of the second term which shall be held after the finding of the indictment."

Now, in *Breedlove* v. *State, supra,* Breedlove, the accused, was free on bond during the pendency of his case and he appealed from an order overruling his motion to dismiss the charges against him because he had not been brought to trial within *three terms after the filing of the information.* After reciting the provisions of § 43-1709, *supra,* as applicable to the case, this court in *Breedlove* v. *State* stated as follows:

"The leading case on the subject is *Stewart* v. *State,* 13 Ark. 720. There it was held that the term at which the defendant is indicted is to be counted as one of the three terms mentioned in the statute. In other words, the statute is applicable where the defendant is not brought to trial at the end of the second term held after the term during which the indictment was filed."

After the above reference to our holding in *Stewart* v. *State, supra,* this court in *Breedlove* then recited that the continuances in *Breedlove* resulting in the delay complained of, were brought about by Breedlove's own motions or acquiescence. The apparently inconsistant, and perhaps confusing, language employed in *Breedlove* apparently arises from the fact that in the *Stewart* case, Stewart was in jail while awaiting trial and Breedlove was free on bond. Stewart's rights to discharge arose under § 43-1708 and the statute would have become operative as to him at the end of two full terms following the term in which he was indicted. It *was necessary* under *Stewart* and under § 43-1708 for three terms to expire before he would have been entitled to discharge under the

statute but, "that is to say, at the end of the second term which shall be held after the finding of the indictment." In other words, the first of the three terms, the one in which the accused is indicted, must expire and then two more terms, the first and second ones after the one in which the indictment is returned, must expire before the accused is entitled to discharge under § 43-1708. Breedlove was free on bond while awaiting trial and the provisions of § 43-1708 did not apply to him at all. His case fell under the provisions of § 43-1709 and that statute would have been applicable to him had he not been brought to trial by the end of *three* full terms following the one in which the information was filed. In *Stewart* we further said:

> ". . . for a prisoner to be entitled to his discharge for want of prosecution, he must have placed himself on the record in the attitude of demanding a trial, or at least of resisting postponements."

Since our decision in *Breedlove* turned on the fact that the delay was brought about by the action of the accused, we apparently overlooked, or failed to distinguish in the opinion, the difference in § 43-1708 applicable in *Stewart* and § 43-1709 applicable in *Breedlove*. Now in *Gardner* v. *State, supra,* we recognized the complications brought about by the multiple divisions of the circuit courts which have occurred since *Stewart* and in which one accused of a felony could be tried in any one of the separate divisions, either criminal or civil, such divisions having different and overlapping terms. In *Gardner* we said:

> "[W]e are of the opinion, and therefore hold, that the expiration of the terms within the meaning of the above statutes applies to terms in any one of the divisions in which the accused could be tried in a multi-division court and does not apply to the combined overlapping terms of the combined divisions."

We are at a loss to state our opinion with additional clarity but in the case at bar if Mr. Knight had not been brought to trial by the end of two court terms following the one in which he was informed upon, either in the first division

of the circuit court, or the second civil division of the circuit court, or the third division of the circuit court, he would have been entitled to seek relief under the provisions of § 43-1708, *supra*, and the court would not have erred in granting the appellee's request under the facts and evidence of record *in this case*.

To summarize, we are of the opinion and so hold, that if an accused remains in jail and is not brought to trial, without fault on his part, by the end of the second term of any one division, either criminal or civil, of the circuit court following the term in which the indictment is returned or information is filed, then he is entitled to seek discharge under the provisions of § 43-1708 subject, of course, to other statutory provisions relating to excusable delay. The same rule applies under § 43-1709 to one accused of crime and free on bond if not brought to trial by the end of the third term of court following the one in which he is charged by indictment or information.

The judgment of the trial court must be reversed and this cause remanded for further proceedings not inconsistent with this opinion.

The judgment is reversed and cause remanded.

BYRD and HOLT, JJ., dissent.

CONLEY BYRD, Justice, dissenting. I dissent for the following reasons:

1. Appeals by the State in criminal cases are not favored and are subject to the restrictions placed on them by Ark. Stat. Ann. § 43-2720 (Repl. 1964), which provides:

"Where an appeal on behalf of the State is desired, the prosecuting attorney shall pray the appeal during the term at which the decision is rendered, whereupon the clerk shall immediately make a transcript of the record and transmit the same to the attorney general, or deliver the transcript to the prosecuting attorney, to be transmitted by him. If the attorney general, on inspec-

ting the record, is satisfied that error has been committed to the prejudice of the State, and upon which it is important to the correct and uniform administration of the criminal law that the Supreme Court should decide, he may, by lodging the transcript in the clerk's office of the Supreme Court, within sixty [60] days after the decision, take the appeal."

The prosecuting attorney did not follow the foregoing statute in the following respects:

A. There is no prayer for appeal in the record. The prosecuting attorney only gave a notice of appeal in accordance with Act 333 of 1971. Since § 13 of Act 333 of 1971 provides that "the manner in which the state or other prosecuting party may appeal in the criminal case is not altered by this act," we then must look to the prior law to determine what is meant by "a prayer for appeal." The answer is provided in the Criminal Code § 327 [Ark. Stat. Ann. § 43-2710 (Repl. 1964)] as follows:

"First. The appeal must be prayed during the term at which the judgment is rendered, and the prayer noted on the record in the circuit court."

B. Ark. Stat. Ann. § 43-2720, *supra*, contemplates that the prosecuting attorney will furnish a complete record. Although the prosecuting attorney, while erroneously acting pursuant to Act 333 of 1971, designated the complete record, the complete record is not before the court. The record contains only the reporter's transcript of the proceedings on the motion to dismiss.

After the prosecuting attorney has properly prayed an appeal and delivered the complete record to the attorney general, an obligation is imposed on the attorney general to inspect the record to satisfy himself that error has been committed to the prejudice of the State and that the correction of the error is important to the "uniform administration of the criminal law." C. R. Stevenson in his treatise, *Supreme Court Procedure* 167 (1956), states: "If the Attorney General desires to take an appeal, he must endorse on the transcript a direc-

tion to the clerk of the Supreme Court to file."

I submit that without the complete record from which to make his inspection, the Attorney General has no basis for making a decision that the appeal by the State is necessary for the "uniform administration of the criminal law." It would be most embarrassing to all officials involved in this appeal if the prosecution of appellee should subsequently be dismissed for insufficient evidence to sustain the conviction.

Also, I note that the United States Supreme Court has held that the Sixth Amendment guarantee of a speedy trial in the United States Constitution is applicable to the several states, *Klopfer* v. *North Carolina*, 386 U.S. 213, 87 S. Ct. 988, 18 L. Ed. 2d 1 (1967), *Smith* v. *Hooey*, 393 U.S. 374, 89 S. Ct. 575, 21 L. Ed. 2d 607 (1969) and *Dickey* v. *Florida*, 398 U.S. 30, 90 S. Ct. 1564, 26 L. Ed. 2d 26 (1970), and although they have laid down no definite standard of what constitutes a speedy trial in terms of days, months or years, they have left no doubt that delay which results in prejudice to the accused will constitute the denial of a speedy trial. See *Dickey* v. *Florida, supra*. Consequently, without the complete record, which may show the deaths of witnesses during the delays involved herein, I don't see how the Attorney General could be in a position to determine that the alleged erroneous ruling of the trial court is necessary to the "uniform administration of the criminal law." Furthermore, we are in no position to determine that the trial court committed reversible error.

2. Next, I submit that the indictment against appellee should be dismissed for lack of a speedy trial under the Constitution of Arkansas, art. 2, § 10 which provides that "In all criminal prosecutions the accused shall enjoy the right to a speedy and public trial. . . ."

The record shows the following dates relative to this case:

| | |
|---|---|
| May 13, 1974 | 3rd Div. Circuit Court commenced its May term. |
| May 20, 1974 | Appellee was arrested and placed in jail. |

| | |
|---|---|
| June 24, 1974 | 3rd Div. Circuit Court commenced its June term. |
| July 5, 1974 | Charges were filed against appellee. |
| Sept. 16, 1974 | 1st Div. Circuit Court commenced its September term of court. |
| Nov. 18, 1974 | 2nd Div. Circuit Court commenced its November term. |
| Dec. 9, 1974 | Special Div. of Circuit Court was held by appointment of Judge Richard Adkisson. |
| Dec. 18, 1974 | Special Div. of Circuit Court was held by appointment of Judge Richard Adkisson. |
| Jan. 27, 1975 | 2nd Div. Circuit Court commenced its January term. |
| Feb. 17, 1975 | 1st Div. Circuit Court commenced its February term. |
| Feb. 24, 1975 | Appellee was put to trial. |

Thus, from the foregoing dates, we can see that appellee was held in jail for all but one week of the May term of the Third Division Circuit Court. He was held in jail for all of the September term of First Division of the Circuit Court. He was held in jail for all of the November Term of the Second Division Circuit Court. He was also held in jail during all of the term of the Special Division of the Circuit Court held by the assignment of Judge Richard Adkisson. During all of this time that appellee remained in jail and in addition to the completed terms of courts, above mentioned, the Third Division of the Circuit Court commenced its June 1974 term and the Second Division commenced its January 1975 term of court — in other words, Circuit Court was held at least six times while appellee was languishing in jail and before the commencement of the February 14, 1975 term of court at

which he was tried. Even then his trial did not commence until one week later.

In *Gardner* v. *State,* 252 Ark. 828, 481 S.W. 2d 342 (1972), we had before us a delay in a prosecution for more than seven months. We there said:

> "The accused in this case remained in jail for more than seven months simply awaiting trial for a determination of whether he was innocent or guilty. It is difficult indeed to consider a trial after such a delay as a *speedy* trial in a three division circuit court in Arkansas where the accused may be tried in any one of the three divisions by the simple process of transferring the case from one docket to another under § 22-322.12, *supra.* On the assumption, however, that the trial court failed to recognize its jurisdiction and authority under § 22-322.12, *supra,* or misinterpreted the purpose and intent of our per curiam, *supra,* we hold that the trial court did not abuse its discretion in denying the motion to dismiss in this case, so the judgment in *this case* is affirmed."

In view of our language in the *Gardner* case, it would appear that the trial court, in view of the authority and jurisdiction of the several Divisions of the Crittenden Circuit Court under Ark. Stat. Ann. § 22-322.12, was certainly warranted in finding that appellee had been denied a speedy trial — after all, appellee was held in jail after the term at which he was arrested for three full terms of the several divisions of the Crittenden Circuit Court without being put to trial.

For the foregoing reasons, I respectfully dissent.

HOLT, J., joins in this dissent.